IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY CO. OF AMERICA, *as Subrogee of Gottlieb Health Resources, Inc. and Gottlieb Memorial Hospital,* | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 00717 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| SEARS LOGISTICS SERVICES, INC. and SEARS ROEBUCK AND COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Travelers Property Casualty Company of America, Inc., sued Sears Roebuck and Company and Sears Logistic Services, Inc. (together, "Sears") as insurance subrogee of Gottlieb Health Resources, Inc. and Gottlieb Memorial Hospital (together, "Gottlieb"). Travelers alleges that by failing to maintain proper drainage conditions and altering the natural flow of water runoff from its property, Sears negligently caused millions of dollars in flood damage to its neighbor Gottlieb's hospital complex in Melrose Park, Illinois. Travelers also brings nuisance and trespass claims based on the same facts. Sears now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint, and alternatively asks the Court to strike portions of the Complaint or require Travelers to provide a more definite statement. For the reasons discussed below, the Court denies Sears' motions in full.

**A.   Background**

The Complaint alleges, and the Court accepts as true for purposes of this Motion, the following facts: On July 23, 2010, a severe storm descended on the Chicago area, producing

1

heavy rains. Gottlieb incurred substantial water damage during the storm. The basement of the hospital was flooded with water up to two feet deep in some spots. The water damaged the hospital's infrastructure and areas such as the cafeteria and the pharmacy; it also destroyed medical equipment and devices in the basement. Gottlieb's insurer, Travelers, ultimately paid out over $4.2 million for the property damage.

Adjacent to and uphill from Gottlieb is a Sears distribution facility. The highly trafficked facility consists of buildings, loading docks, and large paved parking lots. Sears' property also includes a large wooded area consisting of overgrown vegetation and a "wetland area" that includes a large pool of standing water. According to the Complaint, the storm drain system under the developed parts of the Sears property was inadequate to absorb rainfall runoff from the buildings. Due to neglect and poor maintenance, the drainage system became corroded and ultimately, "nonfunctional." This, combined with the slope of the parking lots toward the wooded area, resulted in greater accumulation of water in the pool over time.

During the July 23 storm, rainfall run-off from the developed portion of the Sears property flowed from building roofs and the paved surfaces into the standing pool of water, causing it to overflow and run off of the Sears lot onto the Gottlieb property. A huge volume of water cascaded over the concrete wall of the hospital's loading dock and rushed through the doors into the basement. The water flooded the basement at depths over two feet in some parts, destroying medical equipment, damaging the hospital's infrastructure (such as elevators and wiring), and ruining parts of the facility. The flood interrupted operation of the hospital and necessitated major emergency and long-term repairs.

Based on these allegations, Travelers claims that Sears negligently failed to maintain its property in various ways that created an unnatural surface water flow and caused the flooding of

2

the Gottlieb facility. Travelers enumerates eleven separate negligent acts or omissions, from failing to properly maintain and inspect the underground drainage system to failing to install detention basins. Travelers also claims that the flood waters constituted both a private nuisance and a trespass upon Gottlieb's property.

**B.     Discussion**

Sears moves to dismiss the Complaint in full, arguing that even if all of Travelers' factual allegations are true, there is no basis for liability. Specifically, Sears argues that any water that flowed from its dominant tract to Gottlieb's subservient tract is well within what is permitted by the water-flow easement it enjoys pursuant to Illinois common law. Sears asserts that the natural flow of water, from which its easement emanates, is "along and through the wooded area," and that the water entered Gottlieb's property along precisely that route, precluding liability as a matter of law. Sears further argues that, without any negligence, there can be no nuisance or trespass, because both claims require some unlawful encroachment.

A motion under Rule 12(b)(6) challenges a complaint's sufficiency to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In considering a defendants Rule 12(b)(6) motion, the Court accepts as true all of the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir.2010). However, the Court does not accept as true allegations that are mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009).

A federal complaint should be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But however short and plain, it must contain sufficient detail to "give the defendant fair notice of what the claim is and the grounds upon

3

which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007). And it must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The "required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) All told, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This bears repeating in the context of Sears' arguments: the allegations of the complaint need not "prove" or "demonstrate" anything other than that the plaintiff's claim is *plausible*; the plaintiff is not required to plead every fact that would be necessary to prove in order to prevail on its claims.

Because this case invokes diversity jurisdiction, state substantive law governs the dispute. *Fednav Intern. Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). Here, the parties agree that Illinois law applies. *See id.* (forum state's law applies absent a conflict-of-laws dispute). In applying Illinois law, the Court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969, 971-972 (7th Cir. 2011).

Travelers' complaint sounds primarily in negligence. Negligence entails the breach of a duty owed to the plaintiff that proximately causes damages. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012). In arguing that Illinois law does not provide for liability for the natural flow of water from a dominant to a servient tract, Sears essentially argues that it did not owe a legal duty to Gottlieb under the facts alleged in the Complaint. *See id.* at 1097 (explaining that the "involved, complex, and nebulous" concept of "duty" is the sum of multiple factors describing a relationship between plaintiff and defendant). Travelers, in response to the motion

to dismiss, does not contest Sears' characterization of the relationship between the two properties, although its Complaint did not use the terminology of "dominant" and "servient" estates. Travelers also relies on the same body of water-rights case law as Sears, so there is no disagreement between the parties about the appropriate legal framework. The Court therefore proceeds on the same basis as the parties, designating Sears and Gottlieb as the dominant and servient landowners, respectively.

Illinois follows, and has partially codified, the "civil rule," which provides that the holder of the dominant estate has an implied easement in servient tracts to the extent of any natural water run-off. *See Bollweg v. Richard Marker Assocs., Inc.*, 818 N.E. 2d 873, 884 (Ill. App. Ct. 2004); 70 ILCS 605/2-1. The dominant, or higher, estate has the right to allow surface water to follow the natural course of drainage onto the lower estate and may also construct artificial ditches or drains to more efficiently carry away surface water. *Hahn v. County of Kane*, 964 N.E.2d 1216, 1223-24 (Ill. App. Ct. 2012); *Bollweg*, 818 N.E.2d at 884. And the owner of a dominant estate may also increase or alter the flow of water onto a servient tract if it is required for "proper husbandry" or reasonable development. *Bollweg*, 818 N.E. 2d at 885. However, in *Templeton v. Huss*, the Illinois Supreme Court rejected outright the contention that the dominant estate has "an unlimited right to increase the rate or amount of surface-water runoff flowing onto [the servient estate], regardless of the cause of or extent of the increase." 311 N.E.2d 141, 145 (Ill. 1974). Thus, the Illinois courts consistently repeat that the right to increase water flow or runoff is not unlimited. *Hahn*, 964 N.E.2d at 1224; *Bollweg*, 818 N.E. 2d at 885. When the dominant estate precipitates a "substantial incursion" on the lower estate, the scope of the easement has been violated. *Hahn*, 964 N.E.2d at 1224. Whether the incursion is reasonable

depends on balancing the benefit to the dominant estate with the harm caused to the servient estate. *Bollweg*, 818 N.E. 2d at 885.

Sears' motion to dismiss, predicated on the implied easement it enjoys as dominant landowner, succeeds only if the Court accepts Sears' assertion that the floodwaters that damaged the Gottlieb property followed the "natural course." However, the Complaint alleges otherwise. *See Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 861 (7th Cir. 1999) (on motion to dismiss, "the only 'facts' favorable to a defendant that a court can consider are those alleged in the plaintiff's complaint"). Travelers repeatedly asserts (*see* ¶¶ 7, 9-11, 17) that Sears altered the natural flow and increased the quantity of runoff by installing impervious pavement and neglecting the standing water, among other things.

The Court is not entitled to resolve any question of fact at the motion-to-dismiss stage. *See Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (on motion to dismiss, district court not entitled to "take evidence" or "make findings of fact"). Yet Sears explicitly invites the Court to "resolve" the "issue" of "the natural flow of water on Defendants' property." Mem., Dkt. 13 at 5. Sears asserts that, no matter what Travelers says to the contrary, the Court should conclude that the runoff followed its natural course because "it can be inferred through certain allegations that the natural flow of water can *only* be along and through the wooded area on Defendants' property." Mem., Dkt. 13 at 6 (emphasis added). Sears contends that Travelers' allegations that Sears altered the natural course are "mere conclusions" that are not to be taken as true. The Court disagrees. Travelers points to specific acts or omissions that it contends altered the water flow and increased the amount of runoff onto the Gottlieb property. The Court must accept for purposes of this motion that Sears did (or failed to do) those things. And though Travelers gives general information about the orientation and slope of the Sears property, these

allegations do not compel the conclusion that the water that flooded Gottlieb followed the "natural course." The Court disagrees with Sears that this is "the only reasonable inference," *id.*, that can be drawn from the Complaint. To the contrary, the allegations that Sears paved over large portions of the tract and failed to maintain the drainage systems installed to mitigate the effect of that paving, causing an accumulation of water on the property over time, make it plausible that Sears altered the natural flow of water from the property over time. Many more facts will be necessary to prove the allegation that Sears altered the natural water flow, but no more is required at this stage.

Even if the water did flow from the Sears property to Gottlieb on the natural course, as Sears insists, that would only suffice to locate the water flow easement; it would still not answer whether the scope of easement was unreasonably exceeded. And that cannot be decided as a matter of law at this stage. Sears trumpets its right under Illinois law to "increase or alter the flow of water," but that right is *exception* to the general rule that the dominant estate owner may "do nothing to change the system of drainage so as to increase the burden of surface water drainage upon the owner of the servient estate." *Bossler v. Countryside Gardens, Inc.,* 358 N.E. 2d 352, 353 (Ill. App. Ct. 1976); *see Van Meter v. Darien Park Dist.*, 799 N.E. 2d 273, 279 (Ill. 2003) ("a landowner bears a duty not to increase the natural flow of surface water onto the property of an adjacent landowner"). The exception, still referred to as the "good husbandry" exception despite its extension outside farming uses, applies when the alteration is necessary for agricultural purposes or—more recently—the "reasonable development" of the dominant tract. *See id*; *Hahn*, 964 N.E. 2d at 1224. Here, the allegations in the Complaint do not compel the conclusion that either circumstance applies; this is not agricultural land, and whether the flooding

resulted from "reasonable development" of Sears' property is another factual question that cannot be decided at the pleadings stage.

Furthermore, "[e]ven with this exception, the dominant estate's right to increase the rate or amount of runoff is not unlimited." *Hahn*, 964 N.E. 2d at 1224. The dominant estate is not entitled to increase the water flow to the point of substantially or unreasonably invading the servient tract. *Id*. And here, Travelers alleges that the various acts and omissions it complains of altered the natural flow and unreasonably increased runoff. Travelers points to the impervious paved parking surfaces, the inadequate drainage system that ultimately failed, the inattention to pooled standing water on the property, among other specific allegations. Whether there is a duty to do or not do all of these specific things is immaterial;[1] for present purposes, it suffices that Travelers plausibly alleges that Sears impermissibly increased the natural amount of runoff. Contrary to Sears' arguments, these are not "mere conclusions," but factual allegations that, if proven, might show a breach of the duty owed between adjacent landowners when it comes to drainage and water flow. Resolving the issue of liability requires balancing the landowners' respective costs and benefits. *See Bollweg*, 818 N.E. 2d at 885. That kind of fact-intensive inquiry cannot be performed at the pleadings stage.

Travelers' allegations suffice to give notice of a plausible basis for liability and raise a reasonable expectation that discovery will uncover evidence to support the allegations. *See Twombly*, 550 U.S. at 556. It remains for Travelers to prove that Sears unreasonably increased

---

[1] For this reason the Court finds it unnecessary to decide at this stage whether the alleged failure of the drainage system is ultimately "irrelevant" to the cause of action, as Sears insists. Mem., Dkt. 13 at 7-9. Although Sears' argument is not especially clear, the Court understands it to contend that its installation of a drainage system does not amount to abandonment of its easement for runoff. Travelers does not allege abandonment in the Complaint nor does it raise this argument in opposition to the motion. It plausibly contends, rather, that the malfunctioning drainage system exacerbated the alteration of the natural flow caused by the paving of large areas of the property.

the extent of the water runoff from its property. But dismissal is not proper merely because a plaintiff "may not be able to prove what they allege." *See Morrison*, 649 F.3d at 538.[2]

Finally, the Court turns to Sears' alternative request that the Court either strike, or require a more definite statement of, the paragraph of the Complaint referring to Gottlieb's $50,000 deductible that remains unpaid. *See* Compl. ¶ 13. According to Sears, this paragraph is "immaterial because [Travelers] has no legal interest in the deductible and reference to the deductible amount confuses the issue." Motion, Dkt. 13 at 12. Apparently Sears itself is not "confused," having properly understood that Travelers has no interest in the deductible amount. But any possible confusion has been addressed by Travelers' response to the motion to dismiss, in which it states: "Travelers has not asserted a claim to recover the deductible, and it could not since the deductible is owned by Gottlieb Memorial," which is "not a party to this action." Dkt. 18 at 14. Thus there is no need for a more definite statement or to strike the allegation as "confusing." Nor is the Court persuaded that is should strike the allegation for being "immaterial." The fact of the deductible gives context to the full extent and cost of the flood damage; as Travelers asserts, the paragraph is explanatory. Thus it is not an allegation that is wholly unrelated to the claims or that bears no possible relation to the controversy. *See Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 663 (7th Cir. 1992). Nor is it the type of scandalous, prejudicial material that should be scrubbed from the pleadings to prevent prejudice. *See id*.

---

[2] Sears also argues that the two other common-law claims—for private nuisance and trespass—must be dismissed because Travelers fails to plausibly allege negligence by Sears. In view of the Court's conclusion that Travelers indeed states a claim for negligence, and the absence of any other argument for dismissal, it is unnecessary to determine at present whether either claim is dependent on the ultimate success of Travelers' negligence claim.

For the reasons set forth above, the Court denies the motion to dismiss and the alternative request to strike or to compel a more definite statement.

Date: September 18, 2012

Honorable John J. Tharp, Jr.
U.S. District Judge